WILLIAM A. SADDLEMIRE. *vs.* THE AMERICAN BRIDGE COMPANY

*First Judicial District, Hartford, March Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and BURPEE, Js.

Under General Statutes, § 5355, the Compensation Commissioner is expressly authorized to open or modify an award for the causes and in the manner therein specified.

The request for a modification should follow the form adopted in making the original application, and the order of notice should specifically refer to the statutory cause justifying the desired modification.

In compensation cases, defects in matters of procedure which do not prejudice the rights of the parties are of no avail upon appeal.

*Transferred from third judicial district.

Saddlemire *v.* American Bridge Co.

There is little similitude between a compensation award and a judgment in an action at law; nor between proceedings for a modification of the former and a new trial in the latter.

Ordinarily an award will include all the injuries sustained, but in some cases it may be better not to attempt to include an injury whose extent or prognosis cannot then be satisfactorily determined.

It is within the power of a Compensation Commissioner who is disqualified to designate another Commissioner to conduct a further hearing, should statutory conditions warrant a modification of the original award.

An expression of a Commissioner's belief or of his opinion, has no place in a finding of facts, and cannot be treated as an adjudication. Such a finding should follow the form adopted by judges of the Superior Court, that is, should contain only ultimate facts and the conclusion of the Commissioner, together with a statement of the rulings, the claims of the parties, and the award made. The reasons and arguments form no proper part of the finding, and should be kept for the memorandum of decision.

The compensation fixed by statute (§ 5352) for the loss of a leg, includes the loss of earning power during convalescence, and also such damages as are the ordinary and immediate incidents of the loss of such a member. But injuries which are distinguishable from the immediate results of the amputation, such, for instance, as a phlebitis in the other leg arising from an infection following the amputation, are not, and were not intended by the Act to be, covered by the award for the loss of the amputated limb; and if such phlebitis results in partial or total incapacity, the original award for the loss of the leg is subject to modification under the conditions prescribed by § 5355 of the General Statutes.

The fact that the leg in which the phlebitis developed was somewhat weakened by its fracture years before, and thus was rendered more susceptible to that malady, when subjected to the unusual strain and weight placed upon it by the loss of the other leg, is not sufficient under our Act to defeat the employee's claim for compensation; for under such circumstances the phlebitis is to be attributed not to the prior injury, but to the later one which was its proximate cause.

If the loss of a leg in fact results in total incapacity to work, the sum prescribed for total incapacity, and not the smaller sum for the loss of a leg, is the one to be awarded.

The modified award in the present case stated the gross sum recoverable for the entire injury resulting in total incapacity, and then deducted payments already made under the former award.   *Held* that this disposition of the matter was at once practical and just, and was warranted by the Compensation Act.

Argued March 4th—decided May 7th, 1920.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the second district, while acting for and in place of the Commissioner for the fifth district, in favor of the plaintiff, taken to and tried by the Superior Court in New Haven County, *Case, J.;* the court affirmed the award of the Commissioner, and from this judgment the defendant appealed. *No error.*

The case was first heard by Commissioner Williams who, on August 29th, 1917, ordered defendant to pay $10 a week for 182 weeks for the loss of the plaintiff's right leg, and also the medical and surgical charges.

The Commissioner in his award said: "This award does not include any payments for injuries or permanent disability to the left leg," but is solely "for the loss of the right leg, and is without prejudice to the rights of the claimant to ask for a hearing *de novo* on his claims for injuries to his left leg." In the event of such rehearing, the Commissioner designated Dr. Donohue, Commissioner of the second district, to hear the same.

Commissioner Williams in his finding also said: "From all that I can ascertain I am now of the opinion that the condition of the claimant's left leg is due primarily to an injury sustained by him some years ago" (referring to the injury of 1908, hereafter described).

On October 4th, 1918, plaintiff's attorney by letter requested Commissioner Williams to assign this case for a hearing before Dr. Donohue, as previously designated, and stated his claims as follows: "I desire at this time to make claim for the injury resulting to Saddlemire affecting his left leg, and affecting his total incapacity as a result of one leg and injury to the other leg, and I desire also to claim compensation for Saddlemire which was a direct result and which resulted in him being confined in the hospital for a long period of time outside of the specific injury to his left leg."

Saddelmire *v.* American Bridge Co.

On October 8th, 1918, Commissioner Williams sent notice to the parties in interest as follows: "Certain claims are made which I consider myself disqualified to pass on. A claim for injuries to Saddlemire's left leg. A claim for diminished earning capacity due to his injuries as a whole, and a claim for incapacity payments between the date of his injury and the time of his being cured so far as he has been cured. You and each of you are therefore notified that the Commissioner for the second district, Dr. J. J. Donohue has been designated to act for me in this case and that he will hear and determine this matter at my office in Waterbury, on Thursday, October 31, 1918, at 9:30 A. M."

Commissioner Donohue, in making his award from which this appeal is taken, found the following facts: The plaintiff, while working as a structural iron-worker for the defendant in 1908, broke his left leg. The fracture was reduced and union obtained, and thereafter he continued his employment with defendant as a structural iron-worker, and for one or two years wore an artificial brace, but for six or seven years had not worn this appliance, did not limp as a result of the injuries to his left leg, did not suffer pain or special inconvenience, but did the ordinary work of a structural iron-worker, and was in comparatively good condition. He was, and had been for two or three months prior to the accident, a foreman in charge of a gang of men employed by the defendant. This did not require the same manual labor as was required of one of the employees, but it was still necessary for him to climb about in the same way the employees did.

On December 8th, 1916, the plaintiff sustained a severe injury to his right leg, arising out of and in the course of his employment. As a consequence his right leg was amputated on December 8th, but the operation

was improperly performed and a reamputation was necessary on January 12th, 1917. An infective process followed the second amputation, and the plaintiff for a time was in a critical condition. When the stump of the right leg was sufficiently healed so that it was practicable for the plaintiff to get in a chair, it was found that the left leg could not be lifted or used without having it lifted by the orderly. On the trial an examination revealed a marked phlebitis in the left leg, which had followed as a result of the injury of December 8th.

Commissioner Donohue says in his finding: "I believe it [the phlebitis] followed the trauma to the left leg." Before the accident of December 8th, the plaintiff's left leg was not perfect, but it was a useful leg, and had given him no trouble for some six years next preceding the injury of December 8th, and he had been doing the same work that any other structural iron-worker does. On December 8th he had two good useful legs and could and did pursue his vocation as a structural iron-worker. Since December 8th, as a result of his injury, he lost his right leg and his left leg has been changed from a useful and usable leg to one on which he can only stand at the utmost for half an hour, and that with pain and discomfort, and then is in a condition bordering on collapse; for doing work the left leg has become useless. Since December 8th, 1916, the condition of plaintiff has been one of permanent total incapacity to work. Commissioner Donohue also stated in his finding that whether the phlebitis came on as a direct result of the trauma to the left leg, or was of infectious origin following the amputation of the right leg, it had followed as a result of the injury of December 8th.

The reasons of appeal which the defendant pursues are sufficiently stated in the opinion.

*Arthur M. Marsh* and *Jonathan Grout,* for the appellant · (defendant).

*Clayton L. Klein,* for the appellee (plaintiff).

WHEELER, J.   The denial of the motion to correct the finding, by striking out paragraphs 17, 18, 20 and 21, was correct.   The evidence and the necessary inferences therefrom justified these findings.

The denial of the motion to add paragraphs 25 and 26 to the finding, was erroneous, but, as we shall show later in the opinion, whether these paragraphs were added to the finding or not would not affect the judgment or change the ruling upon questions involved.

The remaining reasons of appeal challenge the authority of Commissioner Williams to leave open for hearing *de novo* the claim for injury to the left leg, and insist that his decision was one of partial incapacity, covering the loss of the right leg and all consequences arising therefrom, and was final.   They challenge the power and jurisdiction of Commissioner Donohue to reopen or modify the award so as to make it an award for total incapacity, since no motion, petition, or proceeding has been had to that end under § 15 of Part B of the Compensation Act of 1913, as amended by § 9 of Chapter 288 of the Public Acts 1915 (General Statutes, § 5355).   These reasons of appeal also assert that Commissioner Donohue erred in his award, for total incapacity, since the previous injury of 1908 resulted in partial incapacity and this injury contributed in a material degree to the total incapacity found by the Commissioner.   And, finally, they press the point that if Commissioner Donohue had any power or jurisdiction over the case, it was only to award compensation for such partial incapacity as resulted solely from the direct injury to the left leg,

since the award of Commissioner Williams covered the loss of the right leg and all consequences arising therefrom.

The authority of the Commissioner is found in the Compensation Act, and the modification of the award of Commissioner Williams could be made only upon proceedings taken in accordance with § 15 of Chapter 138 of the Public Acts of 1913, as amended by § 9 of Chapter 288 of the Public Acts of 1915 (General Statutes, § 5355).

The fundamental point in the case, of necessity, involves an interpretation of this section. It reads as follows: "Section fifteen of part B of said act is hereby amended to read as follows: Any award of or voluntary agreement concerning compensation made under this act shall be subject to modification, upon the request of either party and in accordance with the procedure for original determinations, whenever it shall appear to the compensation commissioner that the incapacity of an injured employee has increased, decreased, or ceased, or that the measure of dependence, on account of which the compensation is paid, has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award in order to properly carry out the spirit of this act. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court."

The primary purpose of this section of the Act is to give compensation to the injured employee in measure as fixed by the statute, and to give no more; to limit the compensation for the incapacity of the injured employee, or for the measure of dependence, to the duration of the injury and incapacity, or of the measure of dependence; to increase the compensation within the statutory measure in so far as the incapacity or

dependence has increased, and in the event of a decrease in the incapacity or the dependence, to decrease the compensation to the extent of this decrease. And in order to cover any possible contingency, the statute finally provides that every award made is subject to modification whenever changed conditions of fact have arisen which necessitate a change of such award in order to properly carry out the spirit of the Act. The modification of the award can be obtained for the causes and through the procedure specified in the statute. The procedure authorized is a request to the Commissioner by either party for a modification, made in the form adopted in a claim for an award. The causes which will authorize the modification are the satisfying the judgment of the Commissioner that the incapacity of the injured employee, or the measure of dependence, has (1) increased, or (2) decreased, or (3) ceased, or (4) that changed conditions of fact have arisen which necessitate a change of such award in order to properly carry out the spirit of the statute.

The procedure followed in bringing this particular claim for a modification of the original award, should not serve as a precedent; it is not in the form of an original determination. Nor is the notice of hearing in the most approved form. This is an order, and should approximate an order of court in its definiteness and its form, and in every instance should specifically bring the claim under some one or more of the statutory causes authorizing a modification of an award. But the record makes it clear that each of the parties had such notice as to give them full opportunity to present to Commissioner Donohue the issue of modification, and that that issue was fully heard and adjudicated without prejudice to any rights of the defendant which cannot be protected upon this appeal. Matters of procedure in compensation cases which do not affect

prejudicially the rights of parties, will not avail upon appeal. Unless such rights be thus affected, the form of procedure before the Compensation Commissioner is exclusively for his determination.

The defendant attempts to liken the award to the judgment of a court, and the proceedings to modify the award to those for a new trial. There is no such similitude. The award is subject to modification at any time for the causes named in the statute, and these are radically different from causes which give ground for a new trial. The award is the creation of statute; it is subject to modification upon the grounds specified in the statute. There is nothing about it which has the finality of a judgment. There was no question of dependency involved. The claims contained in the order of notice of the hearing before Commissioner Donohue, were: For injuries to the left leg; for diminished earning capacity due to the injuries as a whole; and for payments for incapacity between the date of injury and the time of cure, so far as claimant had been cured. This method of stating the claims does not follow the statute, but we think the parties were not misled, and that not only was the injury to the left leg and all of its consequences involved, but also that any increased incapacity was necessarily involved in a claim for diminished earning capacity due to the injuries as a whole. Commissioner Williams concluded his memorandum of decision thus: "The award is purely for the loss of the right leg and is without prejudice to the rights of the claimant to ask for a hearing *de novo* on his claim for injuries to his left leg."

Ordinarily all of the injuries may be included in one award, but it may well be that it will be inadvisable to attempt to include in a present award an injury whose extent or prognosis cannot then be satisfactorily determined. We cannot say that Commissioner Wil-

liams exercised his discretion wrongly in confining the award to the loss of the right leg.

His designation of Commissioner Donohue to conduct the further hearing, because of his own disqualification, was within his power. It was unfortunate that the matter had to be heard by another Commissioner. Every effort should be made to avoid disqualification, so that the same Commissioner may conduct the subsequent hearing, or the hearing for a modification of the original award. Commissioner Williams further states in his memorandum that he was then of the opinion that the condition of the claimant's left leg was due primarily to an injury sustained by him some years ago, and secondarily to the fact that the loss of the right leg had caused an undue strain and weight on the left leg, which, in its weakened condition, owing to the previous injury, it could not bear. The Commissioner was of the opinion that this was a direct result of the loss of the right leg, and was covered by the specific award made. This conclusion was an opinion and cannot be treated as an adjudication, as the defendant insists. Commissioner Donohue found that there was total incapacity of the left leg due to phlebitis. In his finding he says he believes this followed the trauma to the left leg. An expression of a belief has no place in a finding, it is not the equivalent of a finding of fact and must be disregarded. We have suggested heretofore that findings of Commissioners be made in the manner and form of findings of the Superior Court. Only ultimate facts and the conclusion of the Commissioner should appear, together with the rulings made and the claims of the parties, with the award made. The reasons and arguments should be kept for the memorandum of decision. The findings of Compensation Commissioners not infrequently depart from our rule, and instead of stating the facts

give parts of the evidence, expressions of witnesses, and the opinion and belief of the Commissioner. Had there been a definite finding, supported by the evidence, that the phlebitis followed the trauma to the left leg, further discussion would have been unnecessary.

But although this finding does not appear, we think the Commissioner can be justified in his conclusion. He does find that whichever way it came, whether as a result of the trauma to the left leg, or from infection following the amputation of the right leg, the phlebitis in the left leg followed as a result of the injury of December 8th. If the phlebitis did result from the injury to the left leg, compensation must be awarded, for the injury to right and left legs were separate injuries, and compensation for the injury to the left leg had never been made. *Olmstead* v. *Lamphier*, 93 Conn. 20, 22, 104 Atl. 488. If the phlebitis came from an infection following the amputation of the right leg, the defendant contends that this was a direct consequence of the injury to the right leg, and was compensated in the award for its loss.

Compensation for the loss of a leg includes the loss of earning power during the cure, and such damages as are the ordinary and immediate incidents of such a loss. But where, in consequence of the amputation, injuries result which are distinguishable from those immediate results of the amputated limb, for example, if a nervous disorder ensue, or blood poisoning set in, or a phlebitis develops, affections such as these were not intended by the Compensation Act to be compensated in the loss of this member. They are not the normal and immediate incidents of the lost member. We pointed out in *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 28, 104 Atl. 490, that the injuries specified in the Revision of 1918, § 5352, for the loss of a member, will ordinarily involve a period of incapacity of varying

duration. The defendant relies upon a sentence at the close of the opinion, that the award "was also intended to cover all of the injuries resulting from the loss of the member." This statement, as the opinion shows, had reference to the immediate point involved, whether the incapacity resulting from the loss of a member during the duration of the cure was included in the award. All of the injuries resulting from the loss of the member include those ordinary, natural and immediate results of the loss of the member. When the results are unusual, and are not the ordinary incidents following the amputation, and partial or total incapacity results, this is not to be attributed to the loss of the member, and is specifically included in the cases which § 15 of Part B of the Act (General Statutes, § 5355) provides shall authorize a modification of the original award.

Commissioner Donohue held that the phlebitis must be attributed to the injury of December 8th. The correctness of this ruling is one of the chief grounds of the appeal. The defendant claims that Commissioner Williams was right in his conclusion that the phlebitis resulted primarily from the weakened condition of the left leg due to the injury of 1908, and, secondarily, to the added strain and weight put upon the left leg by reason of the loss of the right leg.

If we assume this condition: a weakened left leg due to a prior injury, predisposing it to phlebitis if unusual strain and weight were placed upon it, and the injury of December 8th, the loss of the right leg, throwing this strain and weight on the left leg which caused phlebitis to the left leg and rendered it useless, the phlebitis is not to be attributed to the prior injury, but to the last injury which was its predisposing cause. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 542, 97 Atl. 1020, involved the same principle. A condition

of hernia existed and the strain of lifting aggravated the condition, resulting in death. The last injury developed the ailment which caused the condition of total incapacity, and compensation for the last injury properly includes this final consequence of the injury.

The defendant argues with confidence that if a one-legged man loses his other leg he is entitled only to the specified compensation for the loss of the last leg. But this cannot be so, else if he loses each leg at different times he is merely entitled to the compensation specified for the loss of each leg; and these combined would not equal the award for total incapacity. Our statute did not intend a consequence leading to such injustice. Section 7 of Chapter 288 of the Public Acts of 1915, General Statutes, § 5361, reads as follows: "In case the injury results in total incapacity to work, there shall be paid. . . ." This compensation is greater than that given for partial incapacity in the loss of a leg above the knee. The injury of December 8th resulted in the plaintiff's total incapacity, and the literal reading of the statutory provision for total incapacity brings the plaintiff's case within it. When the loss of a leg in fact results in partial incapacity, the provision for compensation for the loss of a leg applies. Where the loss of a leg in fact results in total incapacity, the provision for compensation for the loss of a leg does not apply.

An Act like that of Massachusetts makes no attempt to apportion the responsibility for a total incapacity, part to a former injury and part to a present injury. The plaintiff's condition of partial incapacity, following the prior injury, has been transformed into a total incapacity by reason of the loss of the right leg and its resulting consequences. Logically and practically the injury to the leg should be held to be the cause of the total incapacity. The prior injury injured his left

leg, but it was still a useful leg. The injury of December 8th, took away his right leg and made his left leg useless. *Branconnier's Case,* 223 Mass. 273, 111 N. E. 792. Cases in other jurisdictions which reach a different conclusion, are so affected by their local statutes that we do not deem it important to differentiate them from this decision.

We do not think the defendant interprets the award of Commissioner Donohue aright: in reality his award does not set the award of Commissioner Williams aside. He makes an award covering all of the injury, that which was not included in the former award and that for the increased injury and incapacity, and from this total, which was the utmost the plaintiff could receive, he deducts payments already made under the former award. That disposition of the matter is at once practical and just, and within the Compensation Act.

There is no error.

In this opinion the other judges concurred.