JOHN COSTELLO *vs.* THE SEAMLESS RUBBER COMPANY
ET AL.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Following the loss of a second finger of his right hand by amputation after an injury, and for which the employee had been awarded compensation, there ensued a period of partial incapacity entirely distinct from that due to the loss of his finger, caused by a condition which was not a normal and immediate incident of such loss. *Held* that under General Statutes, § 5352, as amended by Chapter 142 of the Public Acts of 1919, additional compensation was properly allowed for such partial incapacity.

The amendment of 1919 provides a more liberal measure of compensation, in that it obliterates the distinction theretofore drawn by this court between total incapacity preceding, and that following, the loss.

Argued June 15th—decided July 27th, 1923.

APPEAL by the defendants from a judgment of the Superior Court in New Haven County, *Wolfe, J.*, confirming the original finding and award, and three supplemental findings and awards, of the Compensation Commissioner for the third district, in favor of the plaintiff. *No error.*

The plaintiff suffered an injury arising out of and in the course of his employment, which resulted in total incapacity from August 13th, 1920, to November 10th, 1920, and in the loss by amputation of parts of the thumb and first finger, and of two phalanges and the greater part of the third phalanx of the second finger of the right hand. Compensation was awarded for the period of total incapacity, and beginning November 10th, for the partial loss of thumb and first finger, and for the total loss of the second finger, for the statutory period. No controversy exists as to the propriety of these awards. A second operation for the removal of a piece of bone from the stump of the second finger was performed on May 9th, 1922, resulting in a second period of total incapacity for three weeks, for which additional compensation was awarded. This award has been paid and is not questioned.

The controversy arises out of still another award for partial incapacity from January 24th, 1921, to May 9th, 1922, found to be due to the fact that there remained, after the original amputation of the second finger, a portion—less than one half—of the bone of the proximal phalanx, which by its presence and the movement of the tissues over it, caused pain and inability to do full work, and produced a partial incapacity over and above that which was due to the loss or loss of use of the second finger. This condition of additional handicap continued until the second operation of May 9th, 1922.

Defendants appealed to the Superior Court on the ground that the awards for total incapacity and for the specific statutory compensation for the total loss of the second finger, exhausted the entire compensation to which the plaintiff was entitled under the statute; and that the commissioner erred in awarding in addition thereto, any further compensation for partial incapacity.

*William B. Gumbart*, for the appellants (defendants).

*Thomas F. Reilly*, for the appellee (plaintiff).

BEACH, J. The loss of two phalanges and of the greater part of the third phalanx of the second finger is by the statute required to be construed as the loss of the whole finger, and it is admitted that the plaintiff is entitled, in addition to full compensation for total incapacity, to one half of his average weekly earnings for thirty weeks, as for the total loss of the second finger. The matter in dispute is whether he is also entitled to the further award of $3 a week from January, 1921, to May, 1922, as additional partial compensation for incapacity due to the above described condition of the stump between the first and second operation.

General Statutes, § 5352, as amended by § 7 of Chapter 142 of the Public Acts of 1919, carries the subtitle "Compensation for partial incapacity." The general provision for partial incapacity is compensation equal to one half the difference between the average weekly earnings of the injured employee before the injury and the amount he is able to earn thereafter, not exceeding $18 a week nor less than $5. Then follows the specific provision for certain enumerated injuries: "In case of the following injuries the compensation, in addition to the usual compensation for total incapacity, but in lieu of all other payments for compensation, shall be half of the average weekly earnings of the injured employee prior to such injury, for the terms respectively indicated, but in no case more than eighteen nor less than five dollars weekly . . . (j) for the loss of, or for the permanent and complete loss of the use of, a second finger, thirty weeks; . . ." The defendants' claim is that the statute excludes any allowance for partial in-

capacity due to the loss of a second finger except half earnings for thirty weeks.

Prior to 1919 the statute read: "In case of the following injuries the compensation, in lieu of all other payments [for compensation], shall be half of the average weekly earnings of the injured employee, prior to such injury for the terms respectively indicated." While the statute was in this form the case of *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 104 Atl. 490, came to this court. In that case the claimant was injured, and lost, by amputation on the same day, the terminal phalanx of one finger, and received one award for the loss of a phalanx and another award for total incapacity resulting from such loss. We held in that case that the phrase "in lieu of all other payments" for compensation excluded all other payments than that specified in the schedule on account of the loss of the member and the handicap of the future through such loss. In the case of *Franko* v. *Schollhorn Co.*, 93 Conn. 13, 104 Atl. 485, decided on the same day, the claimant suffered an injury to a finger, which was followed by a period of total incapacity preceding its final loss by amputation, and for the total incapacity during the period of the unsuccessful attempt to save the finger, we held that the claimant was entitled to compensation in addition to the specific compensation for its subsequent loss by amputation. The effect of these two decisions was that § 5352 was held not to exclude additional compensation for incapacity preceding the loss of a member, but to exclude additional compensation for subsequent incapacity caused by such loss. And since the *Kramer* case did not present any other question, it would be more accurate to say that § 5352 was held to exclude additional compensation for subsequent incapacity normally due to such loss.

In *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618,

110 Atl. 63, the claimant suffered an injury resulting in the loss by amputation of his right leg, and either as a result of the original injury to the right leg, or from infection following its amputation, a phlebitis developed in the left leg, causing a partial incapacity quite distinct from and additional to the partial incapacity due to the loss of the right leg. The finding did not make it clear whether the phlebitis resulted from the original injury or from the amputation, and the defendant contended that in the latter case it was a direct consequence of the loss of the leg, and no additional compensation could be awarded in excess of the specific compensation for the loss of the leg. On this point we said: "Compensation for the loss of a leg includes the loss of earning power during the cure, and such damages as are the ordinary and immediate incidents of such a loss. But where, in consequence of the amputation, injuries result which are distinguishable from those immediate results of the amputated limb, for example, if a nervous disorder ensue, or blood poisoning set in, or a phlebitis develops, affections such as these were not intended by the Compensation Act to be compensated in the loss of this member. They are not the normal and immediate incidents of the lost member. We pointed out in *Kramer* v. *Sargent & Co.*, 93 Conn. 26, 28, 104 Atl. 490, that the injuries specified in the Revision of 1918, § 5352, for the loss of a member, will ordinarily involve a period of incapacity of varying duration. The defendant relies upon a sentence at the close of the opinion, that the award 'was also intended to cover all of the injuries resulting from the loss of the member.' This statement, as the opinion shows, had reference to the immediate point involved, whether the incapacity resulting from the loss of a member during the duration of the cure was included in the award. All of the injuries resulting from the loss of the member include those ordinary, natural

and immediate results of the loss of the member. When the results are unusual, and are not the ordinary incidents following the amputation, and partial or total incapacity results, this is not to be attributed to the loss of the member, and is specifically included in the cases which § 15 of Part B of the Act (General Statutes, § 5355) provides shall authorize a modification of the original award."

The defendants attempt to distinguish the *Saddlemire* case, on the ground that the unusual condition creating an additional partial incapacity was in the present case confined to the stump of the amputated finger and did not extend into the hand or into another finger. It is apparent, however, that no distinction based on the mere location of the abnormal condition can be sustained.

Compensation is awarded for incapacity, measured, with more or less accuracy, by loss of earning power, and the point of statutory construction involved is, as the *Saddlemire* case distinctly holds, whether or not the incapacity in question is one which can fairly be said to be a contemplated consequence of "the loss of, or the complete and permanent loss of the use of," the particular member involved. In this case the Commissioner has found that during the period in question there was a partial incapacity entirely distinct from that due to the loss of the second finger, due to a condition which was not a normal and immediate incident of the loss. It has already been stated that the *Kramer* and *Franko* cases were decided prior to the amendment of 1919, which added to § 5352 the words "in addition to the usual compensation for total incapacity." This addition, so far as it affects the prior construction of the section, provides a more liberal measure of compensation because it obliterates the distinction theretofore drawn between total incapacity preceding and following

the loss, and thereby reverses the ruling in the *Kramer* case. The award in the *Saddlemire* case was made before the amendment, but the reasoning of that opinion is not affected thereby.

There is no error.

In this opinion the other judges concurred.