******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS STORY *v.* TOWN OF WOODBURY ET AL.
(AC 37111)

DiPentima, C. J., and Mullins and Bear, Js.

*Argued May 14—officially released September 15, 2015*

(Appeal from Workers' Compensation Review Board.)

*Colette S. Griffin* with whom was *Chris Holland*, for the appellants (defendants).

*Robert S. Kolesnik, Sr.*, with whom was *Stephanie E. Cummings*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendant town of Woodbury[1] appeals from the decision of the Workers' Compensation Review Board (board) affirming the finding and decision of the Workers' Compensation Commissioner for the Fifth District (commissioner). On appeal, the defendant claims that there was insufficient evidence to support the commissioner's finding that the hearing loss suffered by the plaintiff, Thomas Story, arose out of his work related injury, and, consequently, the board erred in affirming the commissioner's decision. We conclude that the board properly determined that the evidence was sufficient. Accordingly, we affirm the decision of the board.

The record reveals the following relevant facts and procedural history. On October 21, 2002, the plaintiff, who at the time was a police officer employed by the defendant, was directing traffic at a construction site. While doing so, he was struck by a car and injured. Specifically, the car's right front fender struck his right knee and lower torso. When the impact spun the plaintiff around, the car's passenger side mirror struck his right elbow. The car continued moving, and the plaintiff's head and neck "violently twisted side to side" as he spun along the side of the car, remaining on his feet.

Once the car had stopped, the plaintiff had a brief exchange with the driver before calling for another officer and an ambulance. At that point, the plaintiff was beginning to feel dizzy and to feel pain in his lower back, neck, elbow, and knees. An ambulance transported the plaintiff to the emergency room, where he reported neck, back, knee, and elbow injuries but did not complain to medical personnel of dizziness. Both of the plaintiff's knees eventually required surgery.[2]

Four days after the accident, when the plaintiff saw his primary care physician, Charles McNair, he exhibited normal neck contour and posture and a full range of motion in his neck, without apparent pain or discomfort. Approximately two months later, on December 17, 2002, the plaintiff again saw McNair and denied feeling any dizziness at that time. Sometime after the accident, the plaintiff began receiving complaints from his wife and friends about his hearing. Thereafter, the plaintiff reported to McNair that he had been experiencing a high-pitched buzzing in his ears and dizziness. As a result, although McNair did not record the plaintiff's report in writing, McNair did refer the plaintiff to Victor Gotay, an ear, nose, and throat specialist.

On January 8, 2004, the plaintiff met with Gotay. The plaintiff told Gotay that since the accident, he had experienced ringing in both ears, being off balance, and hearing loss. Gotay evaluated the plaintiff and diagnosed him with vertigo syndrome[3] and tinnitus.[4] Gotay ordered a hearing test, which showed high frequency

hearing loss in both of the plaintiff's ears. Gotay also ordered an electronystagmogram[5] that was performed on February 5, 2004, and showed abnormal results. Gotay opined to a reasonable degree of medical probability that the plaintiff's hearing loss and loss of balance were caused by the accident when he sustained a labyrinthine concussion.[6]

At the defendant's request, the plaintiff submitted to independent medical examinations by two ear, nose, and throat specialists. The first was performed by William Lehmann. After Lehmann examined the plaintiff, he opined that "there is no plausible reason why one would attribute [the plaintiff's hearing loss and tinnitus] to the accident in question."[7]

When Lehmann subsequently retired, the plaintiff submitted to the second independent medical examination by ear, nose, and throat specialist John Kveton. On the basis of his review of records provided by counsel and his evaluation of the plaintiff, Kveton opined, to a reasonable degree of medical probability, that the plaintiff did not suffer a labyrinthine concussion as a result of the accident, nor was the accident a significant factor in the plaintiff's claims of hearing loss, ringing in the ears, or vertigo.

Kveton testified at his deposition that it "would play a role in [his] assessment" of causation if medical records closest in time to such an accident did not contain reports of ringing in the ears, dizziness, or vertigo, which are symptoms that he would expect a primary care physician to note in a patient's chart. Kveton opined that "[a] labyrinthine concussion would occur with some type of head trauma and [the plaintiff] did not indicate that he had fallen on his head." He also stated that the type of mild high frequency hearing loss the plaintiff exhibited usually is caused by chronic noise exposure rather than the orthopedic injury the plaintiff had sustained. Kveton's examination of the plaintiff indicated that his inner ear's balance mechanism was functioning properly.

On September 24, 2012, and October 10, 2012, the commissioner presided over a formal hearing at which the plaintiff appeared and testified. The reports and deposition testimony of Gotay and Kveton were admitted into evidence. The commissioner issued a finding and decision in which he concluded that the plaintiff suffered a compensable hearing loss as a result of the work related injury sustained on October 21, 2002. The commissioner found the plaintiff's testimony to be "fully credible and persuasive." The commissioner found Gotay's testimony, opinions, and reports to be "fully credible and persuasive," but did not find Kveton's testimony, opinions, and reports or Lehmann's conclusion to be "fully credible and persuasive."

The defendant filed a motion to correct the commis-

sioner's finding and decision, which the commissioner denied. The defendant then appealed to the board, arguing that the commissioner improperly relied on Gotay's opinion because it was "mere speculation or conjecture and not supported by the subordinate facts." The board affirmed the commissioner's finding and decision. The board concluded that Gotay's deposition testimony "reflects a number of statements and answers by . . . Gotay that could support the [commissioner's] inference that . . . Gotay's opinion as to causation was not merely speculative or based in conjecture . . . ." (Footnote omitted.) The board also concluded that Gotay's opinion was based on his examination of the plaintiff, the plaintiff's history, various tests, and Gotay's expertise and experience. This appeal followed. Additional facts will be provided as necessary.

The defendant makes two claims on appeal: (1) that the commissioner improperly relied on Gotay's expert opinion, and (2) that the commissioner should have relied on Lehmann and Kveton's expert opinions instead of on Gotay's expert opinion. We are not persuaded.

We begin by setting forth the applicable standard of review. "The principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 423–24, 28 A.3d 347 (2011).

I

The defendant first claims that the commissioner's finding that the plaintiff's hearing loss resulted from

the accident was neither legally correct nor supported by the evidence because the commissioner relied on Gotay's expert opinion. It argues that the commissioner's reliance on Gotay's opinion was improper for two interrelated reasons: the opinion was grounded in speculation and conjecture, and it was not supported by subordinate facts. We disagree.

"To recover under the [Workers' Compensation Act, General Statutes § 31-275 et seq.], an employee must [prove] that the injury claimed arose out of the employee's employment and occurred in the course of the employment. . . . [I]n Connecticut traditional concepts of proximate cause constitute the rule for determining . . . causation [in a workers' compensation case]. . . . An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 591–92, 986 A.2d 1023 (2010). "This causal connection must be based [on] more than conjecture and surmise." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 294 Conn. 132, 142, 982 A.2d 157 (2009).

"If supported by evidence and not inconsistent with the law, the . . . [c]ommissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the . . . [c]ommissioner is factually questionable." (Internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 385, 44 A.3d 827 (2012).

"When . . . it is unclear whether an employee's [condition] is causally related to a compensable injury, it is necessary to rely on expert medical opinion. . . . Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot reasonably conclude that the [condition] is causally related to the employee's employment. . . . [E]xpert opinions must be based [on] reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . To be reasonably probable, a conclusion must be more likely than not. . . . Whether [a]n expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend [on] the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Citations omitted; internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 142–43.

The defendant claims that Gotay's opinion was based on speculation and conjecture because Gotay admitted that he had not reviewed McNair's records or the Waterbury Hospital medical records even though those records, which documented the plaintiff's symptoms closest in time to the accident, might have included ear, nose, and throat related complaints.

The defendant's argument boils down to this: The medical records closest in time to the accident do not show that the plaintiff complained of dizziness and hearing loss at that time. Because these records do not show complaints of dizziness and hearing loss, those symptoms did not exist then and only developed later. Furthermore, according to Kveton, the absence of such symptoms immediately following the accident would be significant to a conclusion regarding causation. Therefore, because Gotay did not review those records, his opinion that the plaintiff's hearing loss resulted from a labyrinthine concussion caused by the accident could only be speculative. We are not persuaded.

The defendant argues that the present appeal is controlled by *DiNuzzo* v. *Dan Perkins Chevrolet* Geo, *Inc.*, supra, 294 Conn. 132. In *DiNuzzo*, the plaintiff's expert opined that the weight gain and use of pain medication of the plaintiff's decedent following a work related accident had prevented him from exercising and, therefore, hastened his death. The expert attributed the death to a heart attack caused by atherosclerotic heart disease. *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, 99 Conn. App. 336, 339–40, 913 A.2d 483 (2007), aff'd, 294 Conn. 132, 982 A.2d 157 (2009). Neither an autopsy nor a postmortem examination had been performed on the decedent's body. Id., 339. The testimony of the plaintiff's expert, therefore, was the only evidence that the decedent had atherosclerotic heart disease. Id., 344 n.3.

On cross-examination, the plaintiff's expert in *DiNuzzo* was shown records of the decedent's hospitalization, one month before his death, for side effects of the drug Interferon. Id., 346. The plaintiff's expert admitted that he did not know that the plaintiff was taking Interferon or that he had been hospitalized. Id., 346 n.5. Upon reviewing the hospital records, he conceded that the decedent's symptoms on the night of his death could have been attributable to the drug, that a number of other possible causes of death existed, and that it was impossible to pinpoint the actual cause of the decedent's death. Id., 344–45.

This court reversed the board's decision affirming the commissioner's award of widow's benefits to the plaintiff. Id., 347. We concluded that "[t]he reality is that it was not possible to determine with any reasonable degree of probability the cause of the decedent's death given the factual gaps in the record." Id., 346. Therefore, "there were insufficient subordinate facts

before the commissioner from which he reasonably could make . . . a finding [that the decedent's death was the result of a work related injury]." Id., 337.

The Supreme Court affirmed our decision, noting that "[t]he inadequacy of [the] testimony [of the plaintiff's expert] is compounded by the fact that . . . [he] acknowledged . . . that when he gave his opinion . . . he was not aware that the decedent had been hospitalized approximately one month before his death for certain side effects of Interferon." (Citation omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 145. Moreover, even prior to being shown the decedent's hospital records, the plaintiff's expert had admitted that he could testify only as to how the decedent's symptoms on the night of his death might " 'conceivably' " be consistent with a heart attack. Id.

The defendant in the present case urges that *DiNuzzo* is controlling because "a primary reason that the Appellate and Supreme Courts found the medical opinion at issue in *DiNuzzo* unreliable was that the witness relied upon by the . . . commissioner did not consult relevant medical records prior to issuing his opinion on causation . . . ." (Internal quotation marks omitted.) For similar reasons, the defendant relies on *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, supra, 131 Conn. App. 415.

In *Jones*, the commissioner credited the opinion of the plaintiff's expert that the plaintiff's neurogenic bladder condition was the result of a work related motor vehicle accident. We affirmed the board's conclusion that this credibility determination could not stand in light of the commissioner's contradictory finding that a neurologist's diagnosis of the plaintiff, which was the principal basis for the expert's opinion, was *not* credible. As the board reasoned, "[h]ad the . . . commissioner found . . . [the neurologist's] opinion persuasive, it might have been possible to uphold the trier's finding relative to the credibility of . . . [the plaintiff's expert] regarding the causation of the [plaintiff's] neurogenic bladder. However, the . . . commissioner ultimately determined . . . [the neurologist's] opinion was not persuasive and, further, that the evidentiary record was insufficient to determine that the [plaintiff] suffered from a concussion, post-concussive syndrome, or any other neurological deficits. [Accordingly] . . . we are unable to affirm the . . . commissioner's finding that . . . [the plaintiff's expert] was credible relative to her conclusion that the [plaintiff] developed a neurogenic bladder as a result of the motor vehicle accident." (Emphasis omitted; internal quotation marks omitted.) Id., 431.

The commissioner's reason for discrediting the neurologist's underlying diagnosis in *Jones* is particularly pertinent to the present case. Specifically, we observed that "the commissioner expressly discredited [the neu-

rologist's] opinions on the basis of the flawed medical history that he had received from the plaintiff." Id., 424 n.7. Indeed, "[t]he commissioner . . . found that the plaintiff provided [her] various physicians with inconsistent histories regarding her motor vehicle accident and that the credibility and persuasiveness of each physician was directly related to the accuracy of the history given by the plaintiff." (Internal quotation marks omitted.) Id., 426.

In *Jones*, we found it significant that on cross-examination, the plaintiff's expert conceded that she had not reviewed emergency room records or reports of the plaintiff's independent medical examinations. Nevertheless, we emphasized that the commissioner's credibility determination was undermined principally by his finding relating to the neurologist's reliance on the plaintiff's flawed medical history and its adverse impact on the neurologist's credibility. Id., 431. Furthermore, we noted the expert's express concession that her opinion would change if she discovered that either the neurologist or the plaintiff had provided inaccurate information. Id., 432. Because the commissioner's other credibility determinations suggested the strong possibility that the expert's review of medical records would undermine her opinion, we concluded that her opinion was based on speculation and conjecture. Id., 432.

Both of the foregoing cases are distinguishable from the facts presented here. In the present case, Gotay, unlike the expert in *DiNuzzo*, based his opinion on his own examination of the plaintiff and the results of medical tests that he had commissioned. In addition, although Gotay conceded that he did not review the reports of McNair and Waterbury Hospital before formulating his opinion, the fact that they contained no complaints of dizziness or hearing loss did not cause him to waver in his opinion. Rather, Gotay explained the general insignificance of the timing of the plaintiff's symptoms as it related to causation.[8] He likewise explained the insignificance of McNair's reports, testifying that because McNair is a "general practitioner . . . not an [ear, nose, and throat] specialist . . . he is not going to dwell on dizziness, tinnitus, or hearing loss [and] . . . his records are not going to be of any value, whatsoever, when we're dealing with this issue . . . ." He also testified that the record of "[o]ne emergency room visit" was "not enough" to sway his opinion.

Furthermore, unlike in *Jones*, here there is no underlying adverse credibility determination by the commissioner to undermine Gotay's opinion regarding causation. On the contrary, the commissioner here fully credited the plaintiff's testimony regarding his medical history, which is consistent with the history the plaintiff gave to Gotay. Indeed, another significant distinguishing feature in the present case is that Gotay did not merely rely on the history provided by the plaintiff or

on another physician's prior diagnosis. Rather, as he testified, he formulated an opinion only after conducting his own examination of the plaintiff, performing tests, and interpreting the results in light of his training and experience.

Finally, we note that the defendant assumes, incorrectly, that the plaintiff's symptoms must not have existed since the accident because they were not reflected in McNair's and Waterbury Hospital's records. The plaintiff testified before the commissioner, however, that he "had been experiencing ringing and buzzing . . . from the time of the accident, but it was secondary to all my other problems. It wasn't a primary concern of mine. . . . I was expecting it to go away. I never brought it up to . . . McNair because I always thought it would just disappear."

Thus, this is not a case in which, as in *DiNuzzo*, the only evidence linking the plaintiff's hearing loss to the accident is the expert's opinion, or, as in *Jones*, the expert's opinion rests on a foundation the commissioner determined was unsound. To the contrary, Gotay's opinion was based on the plaintiff's account of the accident, which the commissioner found to be credible, as well as his own examination of the plaintiff and the results of tests he conducted on the plaintiff. We cannot, therefore, conclude that Gotay's expert opinion was based on speculation and conjecture.

The second of the defendant's two interrelated arguments is that Gotay's opinion was not supported by subordinate facts in evidence.[9] As noted, "there must be subordinate facts from which the conclusion that there is a causal connection between the employment and the injury can be drawn." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 143. The defendant contends that there is no evidence to support Gotay's opinion that the impact on the plaintiff's head was severe enough to cause a labyrinthine concussion. It also contends that Gotay's opinion was not supported by subordinate facts because he was unable to justify or explain his belief that head trauma is not necessary to cause a labyrinthine concussion. We disagree.

At his deposition, Gotay maintained that a labyrinthine concussion does not require a head injury.[10] He testified that "any shaking of the head or trauma to the head [that] makes that labyrinth move the fluid inside in a certain way . . . can damage either the hearing part of it or the vestibular system, which is the balance part of it. And if the vestibular system gets damaged, then the patient will present with balance issues like dizziness. If the cochlea or the hearing part gets damaged, and it's all connected, the patient will present with hearing loss and with tinnitus, or noise in the ear." Gotay concluded that "that's why, with reasonable medical probability, I made my statement about the

relation between the accident and [the plaintiff's] three complaints [of dizziness, hearing loss, and tinnitus]."

We disagree with the defendant that Gotay's opinion lacks sufficient factual support because of his alleged failure to "justify" his opinion that the shaking and spinning experienced by the plaintiff caused a labyrinthine concussion in the absence of a direct blow to the head. "[T]he facts on which an expert relies for his medical opinion is relevant to determining the admissibility of the expert opinion, but once determined to be admissible, there is no rule establishing what precise facts must be included to support an expert opinion." *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 594.

The defendant did not challenge the admissibility of Gotay's expert testimony. Furthermore, when deposing Gotay, the defendant was able to, and did, challenge his credibility and the weight to be given to his opinion by presenting its own experts' opposing conclusions regarding the issue of causation. Once Gotay's report and testimony were admitted into evidence, the commissioner was entitled to determine the weight to give that evidence. See id.

Moreover, "it is proper to consider medical evidence *along with all other evidence* to determine whether an injury is related to the employment." (Emphasis in original.) Id., 595; see also *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 142 (if "medical testimony by itself . . . or . . . considered along with other evidence" establishes causation, commissioner may reasonably conclude that plaintiff's condition is causally related to his employment [internal quotation marks omitted]).

The plaintiff's account of the accident included a description of severe spinning and shaking of his head and neck that closely resembles Gotay's description of the type of force that causes a labyrinthine concussion. Specifically, the plaintiff testified that when he was struck by the car, his head and neck were "violently twisted side to side as I spun around and around. . . . It was like one of those bobblehead things you put on your windshield . . . ." He also testified that "I've seen a lot of . . . rear-end accidents where people get hit and get whiplash from back and forth motions. I know I got the same thing from side to side." The commissioner found the plaintiff's testimony "fully credible and persuasive." Thus, considering the plaintiff's testimony along with Gotay's expert opinion, the commissioner reasonably concluded that the plaintiff's hearing loss resulted from a labyrinthine concussion caused by the accident.

The defendant also challenges the sufficiency of the factual support for Gotay's opinion on the ground that Gotay was required to "quantify or conclusively

describe the amount of force or shaking that is necessary to cause a labyrinthine concussion without head trauma" in order to provide a sufficient factual basis for his opinion. We disagree. "[S]uch an exacting standard of proof, as urged by the [defendant], is not required. . . . Rather, the commissioner need only be convinced that it was reasonably probable that [a causal connection existed between the plaintiff's employment and his condition]." (Citation omitted; internal quotation marks omitted.) *Estate of Haburey* v. *Winchester*, 150 Conn. App. 699, 716, 92 A.3d 265, cert. denied, 312 Conn. 922, 94 A.3d 1201 (2014); see also *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 594–95 (commissioner properly determined that it was reasonably probable that plaintiff's injury was causally related to her employment).

At Gotay's deposition, the defendant's counsel questioned him extensively as to what force would be sufficient to cause the fluid in the labyrinth to move in a way that would cause the plaintiff's symptoms. Gotay responded that spinning, shaking, or other movement "that could move the fluids inside the ear vigorously enough to affect the different organs that are hiding" would be sufficient. He characterized such force as "significant." The commissioner was entitled to determine that Gotay's responses were credible and to conclude from them, in conjunction with all the other evidence, that the force of the accident was sufficient to cause a labyrinthine concussion.

Finally, the defendant points to the following evidence in the record to cast doubt on the factual basis for the commissioner's conclusion: witnesses to the accident described the plaintiff as having been merely "bumped" or "brushed" by the car; Kveton testified that the type of whiplash injury sufficient to cause a labyrinthine concussion would knock an individual off his feet; and there are no contemporaneous complaints by the plaintiff of dizziness, tinnitus, or hearing loss to corroborate the history he provided to Gotay. We disagree with the defendant that any of this evidence demonstrates a lack of subordinate facts to support the commissioner's conclusion.

As we repeatedly have noted, the commissioner found the plaintiff's testimony to be "fully credible and persuasive." In addition to testifying that his head and neck had "violently twisted side to side" in the accident, the plaintiff testified that he had been experiencing hearing problems, ringing in his ears, and dizziness since that time. Consequently, when presented with differing versions of the accident or the question of whether the plaintiff experienced dizziness and hearing loss immediately afterward, the commissioner was well within his authority to choose which evidence he found persuasive and which evidence he found unpersuasive, and adjudicate the claim accordingly. "As the fact

finder, the commissioner may reject or accept evidence . . . . It is not the province of this court to second-guess the commissioner's factual determinations. . . . This court, like the board, is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Citations omitted; internal quotation marks omitted.) *Estate of Haburey* v. *Winchester*, supra, 150 Conn. App. 717.

After reviewing the record, we conclude that Gotay's opinion was neither the product of speculation and conjecture nor insufficiently supported by facts in the record. Accordingly, the board properly concluded that the commissioner's finding that the plaintiff's hearing loss arose out of his work related injury was not legally incorrect, unsupported by the evidence, or the product of unreasonable inferences.

II

The defendant also claims that the commissioner should have relied on Lehmann and Kveton's expert opinions instead of on Gotay's expert opinion. We disagree.

"Our role is to determine whether the [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . This standard clearly applies to conflicting expert medical testimony. It [is] the province of the commissioner to accept the evidence which impress[es] him as being credible and the more weighty." (Internal quotation marks omitted.) *Hummel* v. *Marten Transport, Ltd.*, 114 Conn. App. 822, 844, 970 A.2d 834, cert. denied, 293 Conn. 907, 978 A.2d 1109 (2009).

In this case, the parties' experts offered opposing opinions as to whether the plaintiff's accident caused his hearing loss. We already have determined that the commissioner's conclusion regarding causation, which he reached after considering this conflicting expert testimony and other evidence in the record, was neither legally incorrect nor the product of unreasonable inferences. The commissioner was entitled to determine that Gotay's opinion was the more credible and persuasive expert opinion.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] PMA Management Corporation of New England, the town of Woodbury's workers' compensation insurance carrier, is also a defendant and a party to this appeal. For convenience, we refer to the town of Woodbury as the defendant.

[2] In voluntary agreements, the parties stipulated that the plaintiff suffered various injuries as a result of the accident.

[3] Vertigo syndrome is defined as "[a] sensation of spinning or whirling motion." Stedman's Medical Dictionary (27th Ed. 2000) p. 1958.

[4] "Tinnitus is defined as [p]erception of a sound in the absence of an environmental acoustic stimulus. The sound can be a pure tone or noise including (ringing, whistling, hissing, roaring, or booming) in the ears."

(Internal quotation marks omitted.) *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 418 n.3, 28 A.3d 347 (2011).

[5] Electronystagmography is defined as "[a] method of nystagmography . . . [in which] skin electrodes are placed at outer canthi to register horizontal nystagmus or above and below each eye for vertical nystagmus." Stedman's Medical Dictionary (27th Ed. 2000) p. 576. Nystagmus is defined as "[i]nvoluntary rhythmic oscillation of the eyeballs . . . ." Stedman's Medical Dictionary, supra, p. 1246. Gotay testified that an electronystagmogram is "a balance test."

[6] The labyrinth is defined as "[t]he internal or inner ear, composed of the semicircular ducts, vestibule, and cochlea." Stedman's Medical Dictionary (27th Ed. 2000) p. 957. Gotay testified that "a concussion of the labyrinth is something that actually shakes it to a point where the patient presents . . . with . . . hearing loss, tinnitus, or dizziness."

[7] Although Lehmann was neither deposed nor his report entered into evidence, Gotay was presented with and refuted Lehmann's conclusion in his deposition testimony. Gotay's deposition testimony was admitted into evidence. See footnote 8 of this opinion. Therefore, Lehmann's conclusion was before the commissioner.

[8] For example, the following exchange occurred between the defendant's counsel and Gotay at his deposition:

"Q. Earlier I read to you the report of Doctor Lehmann in which Doctor Lehmann states that he estimated that the bilateral high-pitched humming, tinnitus began approximately six months post motor vehicle accident.

"A. That's his statement, yes.

"Q. Yes. And I had asked whether that was consistent with your understanding of [the plaintiff's] history.

"A. I cannot say yes to that, because the facts I have [say] ringing in the ears, lightheadedness, and hearing loss since the accident.

"Q. Okay.

"A. October [2002]. So, it doesn't—I don't have here six months after, one month, one day. This says since the accident. That's what I have on my— and that's what I have to—those are the facts (indicating).

"Q. Yes, I understand that.

"A. Okay?

"Q. Would that timing make a difference with respect to your addressing the issue of causation?

"A. No. I'll tell you why.

"Q. Okay.

"A. Very simple. You can get hit in the head today and you can get dizzy a year from now, ten years from now and it could be from that. Okay? So, you don't have to be dizzy the day of the injury. You could be dizzy weeks, months, years after. And it all could be from that accident.

"Q. Okay. So, how is a medical provider, is it that you can opine as to the event when you get six months, a year, two years out?

"A. You do testing, like I did, and then you, based on experience you come to conclusions.

"Q. Okay.

"A. And based on your training."

[9] The defendant characterizes the Supreme Court's decision in *DiNuzzo* as establishing a two-pronged "threshold standard for expert medical evidence"—namely, "(1) expert opinions must be based on reasonable probabilities rather than mere speculation or conjecture and (2) expert opinions must be supported by subordinate facts." In accord with this reading of *DiNuzzo*, the defendant argues that the board, in affirming the commissioner's decision, failed to apply the second prong of the standard. We disagree with the defendant's characterization of *DiNuzzo*.

It is true that, to be admissible, an "[e]xpert [opinion] must be based [on] reasonable probabilities . . . ." (Internal quotation marks omitted.) *DiNuzzo* v. *Dan Perkins Chevrolet Geo, Inc.*, supra, 294 Conn. 142. Nevertheless, we read the requirement of sufficient subordinate factual support— the so-called second prong—to apply to the commissioner's conclusion that a causal connection exists between the injury and the claimant's employment, not to the admissibility of the expert opinion on which the commissioner relies in reaching that conclusion. See id., 143 ("the finding of the commissioner cannot be sustained unless supported by the subordinate facts" [internal quotation marks omitted]). In any case, both of the defendant's interrelated arguments—that Gotay's opinion was based on speculation or conjecture and that it was not supported by subordinate facts—are relevant to our determination of the issue on appeal—whether there was

sufficient factual support in the record for the commissioner's conclusion regarding causation. As a result, we consider both arguments.

[10] Specifically, Gotay explained: "You know, naturally if the patient falls, hits the head on the ground, then there's not reasonable medical probability. You have a certainty. . . . But when there has not been an actual fall or a patient has been struck on the head, it's just either spinning or shaking, or anything that could move the fluids inside the ear vigorously enough to affect the different organs that are hiding, or being inside this labyrinth, that would be enough."

––––––––––––––––––––––––